


# ROANOKE VALLEY ASSOCIATION OF REALTORS®
## Exclusive Right to Represent Seller Agreement
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

This AGREEMENT is made on _____ June 14 _____, 2016 _____, by and between _____ Leonard Whitson Jr _____, SELLER, whether one or more, ("SELLER") and _____ The Real Estate Group _____ BROKER.

In consideration for services to be rendered, the BROKER is hereby granted the exclusive right to sell the Property described in Paragraphs 1 and 3. As used in this Agreement, the term "Seller's Agent" means the Agent who signs this Agreement on behalf of the Broker and any other Agent assigned by Broker, if Broker deems necessary.

*1. **REAL PROPERTY:** SELLER agrees to sell the land and all improvements thereon located in the (check as applicable) ( X ) County or ( ) City of _____ Botetourt _____, Virginia and described as (legal description): Lot _____ 0 _____, Block _____ 0 _____, Section _____ 0 _____, Map of _____ Mt Union _____, or other legal description _____ Tax ID 86-12 _____ and more commonly known as: _____ 5063 Catawba Rd _____, _____ Troutville _____, Virginia, _____ 24175 _____ (Zip), together with the items of personal property described in Paragraph 3 ("Property"). Seller warrants that the Property ( ) does or ( X ) does not include waterfrontage either by deed or easement.

2. **SELLER REPRESENTATIONS:** SELLER represents that as of the commencement date of this Agreement, the SELLER is not a party to a listing agreement on the property as defined in Paragraph 1 with any other real estate broker. SELLER warrants that the person(s) signing this Agreement as "Seller" include(s) every person who possesses an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

3. **PERSONAL PROPERTY INCLUDED:** Included with the sale of the above real estate (if located within said Property at time of signing this Agreement, unless otherwise noted) are the shades, blinds, curtain and drapery rods, screens and screen doors, storm windows and doors, light fixtures, wall-to-wall carpeting, built-in kitchen appliances including garbage disposal, range, oven and dishwasher, laundry tubs, attic fan, smoke and heat detectors, awnings, electrical wiring connections for appliances, ceiling fan(s), garage door opener(s) and all other items attached to the real estate and being a part thereof, including all shrubbery and plantings on the premises. Also included are:

_____
_____
_____
_____

*4. **LEASED EQUIPMENT DISCLOSURE:** The SELLER represents that the following equipment is leased. (Check "NONE" if there is no leased equipment.) The SELLER will be responsible for having the equipment removed and repairing any damage that is the result of the removal of the equipment, in the event the Purchaser elects not to lease the equipment.
  X  None
  ___ Water Heater
  ___ Water Softener
  ___ Security Alarm System
  ___ Propane Tank
  ___ Satellite Dish
  ___ _____
  ___ _____

*5. **LIST PRICE:** The Property is offered for sale at a list price of ($ 169,000.00 _____ ) _____ One Hundred Sixty-Nine Thousand _____ Dollars cash, or such other price as later agreed upon, which price includes selling compensation as set forth in Paragraph 14.

*6. **LISTING PERIOD:** SELLER hereby grants to BROKER the exclusive and irrevocable right to sell the Property for a period commencing _____ July 12 _____, 2016, and expiring 11:59 PM, _____ December 15 _____, 2016.

Rev. 2/2016
Seller Listing

Page 1 of 5

THE REAL ESTATE GROUP, 1636 Apperson Dr. Salem, VA 24153
Phone: (540)375-9000112    Fax: (540)375-9284    Janie Whitlow    5063 Catawba Rd
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

7. **BROKER AND SELLER'S AGENT'S DUTIES:** The BROKER and SELLER'S AGENT shall represent Seller as a standard agent in this brokerage relationship and promote the interests of the SELLER by:
    (a) Performing in accordance with the terms of this Agreement
    (b) Seeking a sale at the price and terms agreed upon in this Agreement or at a price and terms acceptable to the SELLER; however, the BROKER and SELLER'S AGENT shall not be obligated to seek additional offers to purchase the Property once a contract is accepted by SELLER, unless otherwise agreed in writing by the parties to this Agreement;
    (c) Presenting in a timely manner all offers or counteroffers to and from the SELLER, even when the Property is already under contract;
    (d) Disclosing to the SELLER all material facts related to the Property or concerning the transaction of which they have actual knowledge;
    (e) Account for in a timely manner all money and property received in which the SELLER has or may have an interest. The BROKER and SELLER'S AGENT shall maintain the confidentiality of all personal and financial information known or obtained during the agency relationship, unless otherwise provided by law or the SELLER consents in writing to the release of the information. In satisfying these duties, the BROKER and SELLER'S AGENT shall exercise ordinary care, comply with all applicable laws and regulations, treat all prospective buyers honestly and not knowingly give them false information. In addition, the BROKER and SELLER'S AGENT may show alternative properties to prospective buyers, represent other sellers, or provide assistance to a buyer or prospective buyer that are not inconsistent with the BROKER and SELLER'S AGENT'S duties under this Agreement, such as preparing the purchase agreement, obtaining financing and other things necessary to consummate a sale.

*8. **SELLER'S DUTIES:** The SELLER shall:
    (a) Work exclusively with the BROKER and SELLER'S AGENT during the term of this Agreement.
    (b) Pay the BROKER the compensation set forth in Paragraph 14.
    (c) Provide accurate information regarding the Property necessary for the BROKER and SELLER'S AGENT to fulfill their responsibilities under this Agreement and to fulfill the terms of a purchase agreement.
    (d) Inform the SELLER'S AGENT of any factors that may impact SELLER'S ability to fulfill the terms of the purchase agreement.
    (e) Refer to BROKER all inquiries or offers which SELLER may receive regarding the Property.
    (f) REFRAIN FROM DISCLOSING ANY INFORMATION TO ANYONE OTHER THAN THE BROKER AND SELLER'S AGENT, INCLUDING ANY POTENTIAL BUYERS OR ANY OTHER AGENT, EITHER WITH THE LISTING FIRM OR OTHER FIRMS, PREVIEWING OR SHOWING THE PROPERTIES. SELLER ACKNOWLEDGES THAT SUCH DISCLOSURE MAY WEAKEN SELLER'S BARGAINING POSITION IN NEGOTIATION OF A PURCHASE AGREEMENT AND THAT ALL QUESTIONS SHOULD BE REFERRED TO BROKER AND/OR SELLER'S AGENT.
    (g) Retain full responsibility for the Property, including all utilities, maintenance, physical security and liability during the term of this Agreement.
  *(h) Disclose that Seller (   ) is OR ( X ) is not a licensed (active/inactive) real estate agent/broker.

*9. **ADDITIONAL PROVISIONS:**
    (a) **MATERIAL INFORMATION DISCLOSURE:** The BROKER and SELLER'S AGENT shall disclose to prospective Buyers all material adverse facts pertaining to the physical condition of the property which are actually known by the BROKER and SELLER'S AGENT. The BROKER and/or SELLER'S AGENT'S determination of what information is material is in the BROKER and/or SELLER'S AGENT'S sole discretion and is conclusive. The responsibility of the BROKER and/or SELLER'S AGENT to make such disclosure will survive execution of any contract of purchase and continues in effect until settlement is concluded. In the event that parties to a contract regarding the Property fail to close and the Property is again marketed by BROKER, SELLER acknowledges and agrees that any and all material adverse facts discovered during the initial marketing of the Property shall be disclosed to any subsequent Purchasers.
    (b) **RESIDENTIAL PROPERTY DISCLOSURE:** The Virginia Residential Property Disclosure Act, Sections 55-517 et. seq. of the 1950 Code of Virginia as amended requires the SELLER of certain residential property to furnish the Purchaser a property disclosure statement. The SELLER is not required to make any representations regarding parcels adjacent to the Property.
    (c) **FAIR HOUSING DISCLOSURE:** This Property shall be shown and offers considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdiction.
    (d) **PROPERTY OWNER ASSOCIATION DISCLOSURE:** SELLER represents that the Property (   ) is or ( X ) is not located within a development which is subject to the Virginia Property Owners Association Act ("the POA Act"). If the Property is within such a development, the POA Act requires that the SELLER obtain from the property owners' association ("the Association") an association disclosure packet (the "packet") and provide it to the Purchaser. The information contained in the packet shall be current as of a date specified on the packet. Purchaser may cancel the Purchase Agreement within three or six days (depending on the manner of delivery) after receiving the association disclosure packet or being notified that the association disclosure packet will not be available. The right to receive the association disclosure packet and the right to cancel this contract are waived conclusively if not exercised before settlement.

(e) **CONDO DISCLOSURE:** SELLER represents that the Property ( ) is or ( **X** ) is not located within a development which is subject to the Virginia Condominium Act ("the Condominium Act"). If the Property is within such a development, the Condominium Act requires that the SELLER obtain from the unit owners' association ("the Association") a resale certificate ("the certificate") and provide it to the Purchaser. The information contained in the certificate shall be current as of a date specified on the certificate. Purchaser may cancel the Purchase Agreement within three or six days (depending on the manner of delivery) after receiving the condominium resale certificate. The right to receive the condominium resale certificate and the right to cancel this contract are waived conclusively if not exercised before settlement.

(f) **LEAD-BASED PAINT DISCLOSURE:** The SELLER represents that the Property ( **X** ) was or ( ) was not built prior to 1978. This disclosure is required by the Residential Lead-Based Paint Hazard Reduction Act (Title X of Public Law 102-550) which directs the Environmental Protection Agency and HUD to regulate disclosure of lead-based paint hazards in the sale of pre-1978 residential properties. If the Property was built prior to 1978, Seller must sign and initial "Disclosure of Information and Acknowledgment of Lead-Based Paint and/or Lead-Based Hazards" to become a part of this Agreement, and shall provide any records, test reports or other information related to the presence of lead-based paint or lead-based paint hazards on the Property to the Seller's Agent.

(g) **DISCLOSURE STATEMENT FOR RESIDENTIAL PROPERTY PREVIOUSLY USED TO MANUFACTURE METHAMPHETAMINE:** The Code of Virginia requires the Seller of residential real property who has actual knowledge that a property was (1) previously used to manufacture methamphetamine and (2) has not been cleaned up in accordance with state guidelines to provide a written disclosure of that fact to the prospective Purchaser.

*10. **AUTHORIZED COOPERATION AND COMPENSATION:**
(a) The SELLER authorizes the BROKER to make an offer of cooperation and compensation to other Brokers acting as subagents and offer compensation in the amount of **None**           .
(b) The BROKER has informed the SELLER that some potential Buyers may elect to use the services of a Buyer Agent. The BROKER is authorized to offer cooperation and compensation to other Brokers acting as Buyer Agents and offer compensation in the amount of        **3%**          .
(c) The BROKER is authorized to make an offer of cooperation and compensation to other Brokers acting in legally recognized non-agency capacities and offer compensation in the amount of    **3%**          .
(d) DISCLOSED DUAL AND DESIGNATED AGENCY. The SELLER acknowledges that in the normal course of business the Broker may represent buyer clients who may be interested in SELLER'S Property. If a buyer client wishes to purchase SELLER'S Property, then the SELLER will be represented in one of the two ways that are permitted under Virginia law. In this situation, either Disclosed Dual Agency or Disclosed Designated Agency will occur and the appropriate Consent and Confirmation Agreement will be signed by the Buyer and the SELLER. A copy of each Consent and Confirmation Agreement follows this Agreement. After reading the Consent and Confirmation Agreements, the SELLER agrees to sign the appropriate Consent and Confirmation Agreement in the event either of these situations arise.

**DISCLOSED DUAL AGENCY** occurs when the SELLER'S AGENT and the Buyer's Agent (who may be the same) and the firm's principal and/or supervising broker are in the same firm, all of whom are Disclosed Dual Agents representing both the Buyer and the SELLER. The limitation on the Disclosed Dual Agent's ability to represent fully either party is explained fully following this Agreement.

OR

**DISCLOSED DESIGNATED AGENCY** occurs when a buyer and SELLER in a particular transaction are represented by different sales associates affiliated with the same firm. The principal and/or supervising broker may elect to assign the SELLER'S AGENT as the Designated Seller's Agent and the Buyer's Agent as the Designated Buyer's Agent. However, the principal and/or supervising broker reserves the right to assign a Designated Agent other than the Seller's Listing Agent or Buyer's Agent. The Disclosed Designated Agents are not dual agents and represent fully the interests of their respective clients in a particular transaction.

*(e) **IMPORTANT NOTICE TO SELLER:** SELLER is NOT required to agree and accept all of items (a) through (d) above. After review of items (a) through (d), SELLER agrees to accept items (a) through (d) above except for the following items which are hereby deleted: **None**         . If none are deleted, state "NONE" in this blank. If none are deleted, (a) through (d) shall apply.

11. **MULTIPLE LISTING SERVICE:**
(a) The SELLER authorizes the BROKER to disseminate information regarding the Property through ( **X** ) Multiple Listing of the Roanoke Valley ("MLS") and/or ( ) other MLS _____ of which Broker is a member and to solicit cooperation.
(b) It is understood that the MLS and the Roanoke Valley Association of REALTORS ("RVAR") are not parties to this Agreement and do not set, control, recommend or suggest the amount of compensation for any brokerage service rendered pursuant to this Agreement, whether by BROKER, or by any other cooperating Broker.
(c) The SELLER authorizes the Broker to place on the Property ( **X** ) an electronic lock box provided by the MLS and/or ( ) other _____ and allow access to that box by REALTORS and REALTORS' assistants.
(d) The SELLER understands and agrees that in consideration of the use of BROKER'S services and facilities and of the facilities of the MLS, the SELLER and their heirs and assigns agree that all salespersons, brokers, the MLS, RVAR and their directors, officers and employees, except for malfeasance on the part of such parties, are not responsible for vandalism, theft or damage of any nature whatsoever of the Property or its contents during the listing period, and that the SELLER waives any and all rights, claims and causes of action against them and holds them harmless for any property damage or personal injury arising from the use or access to the Property by any person during the listing period.

**\*12. AUTHORIZATION REGARDING INTERNET DISPLAY:**
(a) SELLER authorizes BROKER to advertise and disseminate information about the Property, including any visual images of the outside and inside of the Property, by any method and media the BROKER deems appropriate, including the Internet, unless SELLER opts out of Internet display by completing Paragraph 12(b) below.
(b) **If SELLER does not want the Property listing or address displayed on the Internet, SELLER must complete the Opt-Out of Internet section below.**

---

**OPT-OUT OF INTERNET**
**Complete this section only if SELLER chooses to opt-out of Internet display.**

Seller may opt-out of having the Property listing or Property address displayed on the Internet by initialing Option A or B below.

**OPTION A:** ( ___/___ ) SELLER has advised BROKER that SELLER does not want the Property displayed on the Internet.
**OR**
**OPTION B:** ( ___/___ ) SELLER has advised BROKER that SELLER does not want the address of the Property displayed on the Internet.

SELLER understands and acknowledges that if **OPTION A** has been selected, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.

---

(c) If Internet display is authorized, SELLER acknowledges that the Property may be displayed on the websites of other Brokers who participate in the MLS(s) in which the Property is listed. Some **Broker websites (also known as Virtual Office Websites VOWs)** may allow third-parties to (i) write comments or reviews about the Property or display a hyperlink to comments or reviews in immediate conjunction with particular listings or (ii) display an automated estimate of the market value of the Property (or hyperlink to such estimate) in immediate conjunction with the Property, SELLER may choose to authorize or disable either or both of these features, as indicated below.

SELLER (initial one) _____ authorizes or _____ does not authorize third-parties to write comments or reviews about the Property or provide a hyperlink to comments or reviews in immediate conjunction to the Property **on Broker websites (also known as Virtual Office Websites VOWs.**

SELLER (initial one) _____ authorizes or _____ does not authorize an automated estimate of the market value of the Property or any hyperlink to such estimate in immediate conjunction with the Property **on Broker websites (also known as Virtual Office Websites VOWs.**

**This authorization does not apply to consumer websites that are not Broker-owned.**

13. **ADDITIONAL AUTHORIZATIONS:** Authority is granted to the BROKER to:
(a) Place a "For Sale" sign on the Property and to remove all other signs.
(b) Advertise and disseminate information about the Property, including any visual images of the outside and inside of the Property, by any method and media the BROKER deems appropriate, unless otherwise indicated in Paragraph 12.
(c) Show the entire Property during reasonable hours. SELLER also grants this authority to cooperating Brokers. To facilitate and/or consummate a sale, SELLER will cooperate to allow appraisers, inspectors or other persons access to the Property.
(d) Use BROKER's best judgment in determining how and when to divulge the existence of an offer or offers on the Property of which BROKER is aware to other brokers. Owner shall inform BROKER if Owner is unwilling to permit BROKER to divulge the existence of any particular offer on the Property.

\*14. **COMPENSATION:** SELLER agrees to pay BROKER a cash fee of _____ 6% _____ in any of the following events:
(a) The Property is sold, exchanged or leased with purchase-option to anyone during the listing period, whether or not BROKER is the procuring cause of such sale or lease.
(b) Anyone produces a Buyer ready, willing and able to buy the Property during the listing period upon terms consistent with this Agreement, whether or not BROKER is the procuring cause.
(c) SELLER acts to prevent the sale of the Property by attempting to cancel this Agreement without BROKER'S written consent, by renting the Property or granting an option on the Property during the listing period, by breaching any Purchase Agreement, or by otherwise acting to prevent the sale.
(d) The Property is sold, exchanged or leased with purchase-option within __30__ days after expiration of this Agreement to any person (or related party) to whom the Property was shown or offered by BROKER, SELLER or any other person during the listing period; however, this provision shall not apply if the Property is listed with another real estate broker at the time of such sale or lease.

15. **BROKER AND SELLER'S AGENT DISCLAIMER:** SELLER acknowledges that the BROKER and SELLER'S AGENT are being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, home inspector or other professional service provider. The SELLER has been advised to seek professional advice concerning the condition of the property and legal and tax matters.

16. **SELLER DEFAULT:** In the event SELLER defaults under this Agreement, BROKER shall be entitled to recover from SELLER the reasonable attorney's fees and court costs incurred by BROKER in enforcing the provisions of this Agreement.

*17. **ADDITIONAL DOCUMENTS:** Attached hereto and made a part of this Agreement are:
  (a) RVAR MLS Input Sheet
  *(b) Virginia Residential Property Disclosure Act (check one)  **X** Attached  ___ Not Applicable
  *(c) Lead-Based Paint Disclosure (check one)  **X** Attached  ___ Not Applicable
  (d) Residential Septic System Disclosure  **X** Attached  ___ Not Applicable
  (e) Lake Disclosure ___ Attached  **X** Not Applicable
  (f) RESPA Disclosure ___ Attached  **X** Not Applicable
  (g) _____
  (h) _____

18. **ADDITIONAL TERMS AND AUTHORIZATIONS:**  Listing and sale subject to court approval

19. **FACSIMILES:** This Agreement may be signed in one or more counterparts, and all of which shall be considered the same instrument. Signed documents and counterparts received via electronic or facsimile transmission shall be considered originals and are likewise enforceable.

20. **ELECTRONIC SIGNATURES:** In accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign (the Act), and other applicable local or state legislation regarding Electronic Signatures and Transactions, the parties do hereby recognize the use of electronic signatures as an additional method of signing or initialing this Agreement.

21. **ENTIRE AGREEMENT:** This Agreement represents the entire agreement between SELLER and BROKER and may not be modified or changed except by written instrument executed by the parties. This contract is and shall be governed by the laws of the Commonwealth of Virginia and the SELLER binds himself, his heirs, successors, assigns, executors and/or administrators for the faithful performance of the Agreement. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the printed terms hereof, the handwritten or typewritten terms shall control. Should any portion of this Agreement be deemed ineffective and/or unenforceable, all other provisions hereof shall remain in full force and effect. The terms of this Agreement shall remain in full force and effect as set forth herein and any revision, modification or termination of the terms hereof must be in writing to be effective. Receipt of a signed copy of this Agreement is hereby acknowledged by SELLER.

_[signature]_  7/26/16  SELLER
(Date)
Leonard Whitson Jr

_____ SELLER
(Date)

_____
(SELLER'S Mailing Address)

_____
(City)    (State)    (Zip)

_____
Phone: (Office)    (Home)

_____
(FAX)    (Cell)

_____
(Email)

The Real Estate Group    FIRM NAME

By: _[signature]_
(SELLER'S AGENT)
Janie F. Whitlow

1636 Apperson Drive
(SELLER'S AGENT'S ADDRESS)

Salem                              VA        24153
(City)                           (State)    (Zip)

(540) 375-9000
Phone: (Office)    (Other)

_____
(FAX)    (Cell)

_____
(Email)

© 2016 by the Roanoke Valley Association of REALTORS®. All rights reserved. This form may not be reproduced in any manner, including but not limited to deletions or additions, or by any electronic or mechanical means, without permission in writing from the Roanoke Valley Association of REALTORS®. This form may only be used by members in good standing of the Roanoke Valley Association of REALTORS® or by other REALTORS® pursuant to license agreement with the Roanoke Valley Association of REALTORS®.

# Dual Agency Consent and Confirmation Agreement

(To be signed by Seller before reviewing offer and to be signed by Buyer before signing offer.)

1. Seller and Buyer acknowledge and agree that the real estate firm's principal and/or supervising broker and the Seller's Listing Agent and Buyer's Agent (collectively called the "Agent") are undertaking a Consensual Dual Agency representation in the sale of the above property. Seller and Buyer have previously been informed of the possibility of Dual Agency arising if a buyer client becomes interested in a seller client's property. Seller and Buyer have consented to this dual representation and hereby confirm their consent by signing the appropriate form after reading the following description of the type of representation to be provided.

2. Description of Agent's Role:
Because the Agent is acting for both Seller and Buyer in this transaction, the Agent shall make every reasonable effort to remain impartial to Seller and Buyer. Seller and Buyer acknowledge that, prior to the creation of the Dual Agency, the Agent acted as the agent to both Seller and Buyer. In those separate roles, the Agent may have obtained information which, if disclosed, could harm the position of the party providing such information to the Agent. Seller and Buyer agree that the Agent shall not be liable to either party for refusing or failing to disclose information which, in the sole discretion of the Agent, would harm one party's position and would benefit the other party. However, this Agreement shall not prevent the Agent from disclosing to Buyer any material adverse facts pertaining to the physical condition of the property actually known by the Agent or any other information which must be disclosed by law or regulation. The Agent agrees not to disclose (a) to Buyer information about what price Seller will accept other than the Listing Price, or (b) to Seller information about what price Buyer will pay other than any written offered price. Agent may be acting without knowledge of the Seller's or Buyer's needs, their knowledge of the market or their capabilities in dealing with the intricacies of real estate transactions. In the event of default by either party the Agent may terminate its Dual Agency role and this Agreement by mailing a written termination notice to Seller and Buyer. If the Seller and Buyer do not enter into an agreement for the purchase of the Seller's property, such dual agency shall terminate.

3. Description of Seller's and Buyer's Role:
Because of the Agent's Dual Agency relationship, Seller and Buyer understand that they have the responsibility of making their own decisions as to what terms are to be included in any Purchase Agreement between them. Seller and Buyer also acknowledge that they are aware of the implications of the Agent's Dual Agency role including the limitation on the Agent's ability to represent fully Seller or Buyer. Seller and Buyer have determined that the benefits of entering into a transaction between them with the Agent acting as agent for both of them outweigh such implications. Seller and Buyer understand that they may each seek independent legal counsel in order to assist with any matter relating to a Purchase Agreement or to the transaction which is the subject matter of a Purchase Agreement. Seller and Buyer agree that Agent shall not be liable for any claims, damages, losses, expenses or liabilities arising from the Agent's role as a Dual Agent. Seller and Buyer shall have a duty to protect their own interests and should read this Agreement and any Purchase Agreement carefully to ensure that they accurately set forth the terms which they want included in said agreements. **Either party may engage another agent at additional cost to represent their respective interests.**

EXAMPLES OF WHAT THE AGENT <u>MAY DO</u> FOR SELLER AND BUYER WHEN ACTING AS A DUAL AGENT:

- Agent will treat the Seller and Buyer honestly.
- Agent may provide facts and choices to the Seller and Buyer.
- Agent may provide information about the property and neighborhood to the Buyer.
- Agent may respond to questions about the property.
- Agent will disclose any material adverse facts pertaining to the physical condition of the property actually known by the Agent and any other information which must be disclosed by law or regulation.
- Agent may arrange for property inspections.
- Agent may explain closing costs and procedures.
- Agent may assist with comparison of financing alternatives.
- Agent may provide information about comparable properties so the Seller and Buyer may make an educated decision on what price to accept or to offer.
- Agent will assist with the preparation of the Purchase Agreement.
- Agent will work diligently to facilitate the sale and Agent will work with Seller's and Buyer's lawyers, tax accountants, inspectors and other advisors in order to expedite the closing.

WHAT THE AGENT <u>MAY NOT</u> DO FOR SELLER AND BUYER WHEN ACTING AS A DUAL AGENT:

- Agent may not disclose to either party or their representatives any personal, financial, or confidential information known by the Agent or obtained by the Agent in the course of the agency relationship, without the prior written consent of the party adversely affected by the disclosure.
- Agent may not disclose the price the Seller will accept other than the listing price without written permission of the Seller.
- Agent may not disclose the price the Buyer is willing to pay without written permission of the Buyer.
- Agent may not advise either Buyer or Seller as to the terms to offer or accept in any offer or counteroffer; however, Agent may have advised one party as to such terms prior to the commencement of the dual agency.
- Agent may not advise either Buyer or Seller as to the suitability of the property, its condition (other than to make any disclosures as required by law of any licensee representing a seller) or the repairs to make or request.
- Agent may not advise either Buyer or Seller should any dispute arise later relating to the transaction.

Rev. 2/2016
Seller Listing

# Designated Agency Consent and Confirmation Agreement

(To be signed by Seller before reviewing offer and to be signed by Buyer before signing offer.)

The Buyer and Seller may be represented in a particular transaction by the same firm, but only if the scope of the agency is limited by a written agreement and <u>only</u> with the express knowledge and written consent of both the Buyer and the Seller.

1. Seller and Buyer have previously been informed of the possibility of Designated Agency arising if a buyer and seller in a particular transaction are represented by different agents affiliated with the same firm. Disclosed Designated Agency occurs when the firm's principal and/or supervising broker elects to assign Disclosed Designated Agents to represent different clients in the same transaction. Seller and Buyer acknowledge and agree that the firm's principal and/or supervising broker, and the Seller's Listing Agent and Buyer's Agent are undertaking a consensual designated agency representation in the sale of the above property. The firm's principal and/or supervising broker reserves the right to assign a Designated Agent other than the Seller's Listing Agent or Buyer's Agent. The principal and/or supervising broker will act as a Disclosed Dual Agent of both the Seller and Buyer clients.

2. <u>Description of Agent's Role</u>:
The Designated Seller's Agent and the Designated Buyer's Agent represent only the interests of their respective clients, and may therefore represent those interests fully. The Designated Seller's Agent and the Designated Buyer's Agent may not disclose, except to their principal and/or supervising broker, personal or financial information received from the clients in the course of the agency relationship and any other information a client requests be kept confidential, unless that information is required by law to be disclosed or the client consents to its disclosure in writing.

3. <u>Firm's Principal and/or Supervising Broker's Role</u>:
To ensure that the Seller's Listing Agent and Buyer's Agent can fully represent the interests of their clients, the principal and/or supervising broker will act as a Disclosed Dual Agent of both the Seller and the Buyer clients, and as such will remain impartial to both the Seller and Buyer. As a Disclosed Dual Agent, the principal and/or supervising broker:

    A. Must not disclose to either client or their representatives any personal, financial and confidential information known or obtained during the agency relationship, without the prior written consent of the party adversely affected by the disclosure.
    B. Will treat the Seller and Buyer honestly.
    C. May provide facts and choices to the Seller and Buyer and their Designated Agent.
    D. May not advise the Seller or Buyer or their Designated Agents as to the terms to offer or accept in any offer or counteroffer; however, may have advised one party as to such terms prior to the commencement of the Dual Agency.
    E. May not advise the Seller or Buyer or their Designated Agents as to the suitability of the property, its condition (other than to make any disclosures as required by law of any licensee representing a seller) or the repairs to make or request.
    F. May not advise the Seller or Buyer or their Designated Agents should any dispute arise later relating to the transaction.

Nothing contained in this Agreement shall prevent the Disclosed Dual Agent from disclosing to the Buyer and the Seller any material adverse facts pertaining to the physical condition of the property actually known by the Disclosed Dual Agent or any other information that must be disclosed by law or regulation.

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
## NOTICE TO SELLER AND PURCHASER

> The Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the *Code of Virginia*) requires the owner of certain residential real property, whenever the property is to be sold or leased with an option to buy, to furnish this form to the purchaser and to refer the purchaser to a Virginia Real Estate Board website for additional information.
> Certain transfers of residential property are excluded from this requirement (see § 55-518).

Property Address/
Legal Description:
5063 Catawba Rd, Troutville,   24175
Tax ID 86-12

The owner makes no representations with respect to the matters set forth and described at the RESIDENTIAL PROPERTY DISCLOSURES web page. The purchaser is advised to consult the website (http://www.dpor.virginia.gov/News/Residential_Property_Disclosures/) for important information about the real property.

The undersigned owner(s) represents that there are no pending enforcement actions pursuant to the Uniform Statewide Building Code (§ 36-97 et seq.) that affect the safe, decent, and sanitary living conditions of the real property described above of which the owner has been notified in writing by the locality, nor any pending violation of the local zoning ordinance which the violator has not abated or remedied under the zoning ordinance, within a time period set out in the written notice of violation from the locality or established by a court of competent jurisdiction, except as disclosed on this statement.

The owner(s) acknowledge having carefully examined this statement and further acknowledge that they have been informed of rights and obligations under the Virginia Residential Property Disclosure Act.

_____  7/24/16      _____
Owner                    Date          Owner                    Date
Leonard Whitson Jr

The purchaser(s) acknowledge receipt of a copy of this disclosure statement and further acknowledge that they have been informed of their rights and obligations under the Virginia Residential Property Disclosure Act.

_____  _____      _____  _____
Purchaser                Date          Purchaser                Date

DPOR 7/12

THE REAL ESTATE GROUP, 1636 Apperson Dr. Salem, VA 24153    Phone (540)375-9000
Jamie Whitlow
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    5063 Catawba Rd




# ROANOKE VALLEY ASSOCIATION OF REALTORS®

## RESIDENTIAL SEPTIC SYSTEM DISCLOSURE STATEMENT

Section 32.1-164.1:1 Code of Virginia provides whenever any onsite sewage system is failing and is on or serves real property consisting of not less than one nor more than four dwelling units and the Board of Health's (Board) regulations for repairing such failing system impose (i) a requirement for treatment beyond the level of treatment provided by the existing onsite sewage system when operating properly or (ii) a new requirement for pressure dosing, the Owner may request a waiver from such requirements. The Commissioner shall grant any request for such waiver, unless he finds that the failing system was installed illegally without a permit. Any such waivers shall be recorded in the land records of the clerk of the circuit court in the jurisdiction in which the property on which the relevant onsite sewage system is located. Waivers granted hereunder shall not be transferable and shall be null and void upon transfer or sale of the property on which the onsite sewage system is located. Additional treatment or pressure dosing requirements shall be imposed in such instances when the property is transferred or sold.

The Owner of the relevant property shall disclose that any operating permit for the onsite sewage system that has been granted a waiver authorized by this subsection shall be null and void at the time of transfer or sale of the property and that the Board's regulatory requirements for additional treatment or pressure dosing shall be required before an operating permit may be reinstated.

**The Owner(s) acknowledges that the Broker has informed the Owner of the Owner's rights and obligations with respect to the information above. The Owner(s) certify that they (  ) have (X) have not been granted a waiver from the Board. In the event the Owner has been granted a waiver, the Owner shall provide a separate disclosure form that acknowledges such waiver.**

Property Address/ 5063 Catawba Rd, Troutville, 24175
Legal Description: Tax ID 86-12

_____    7/26/16 _____
Owner                Date            Owner            Date
Leonard Whitson Jr

**NOTE TO PURCHASER(S):** Pursuant to Section 32.1-164.1:1, the Owner is required to deliver the Disclosure, if applicable, to the Purchaser prior to the acceptance of a real estate purchase contract with respect to the Property. If disclosure is applicable and is delivered to the purchaser after the acceptance of the real estate purchase contract, the purchaser's sole remedy shall be to terminate the real estate purchase contract at or prior to the earliest of the following: (i) three days after delivery of the disclosure in person; (ii) five days after the postmark if the disclosure is deposited in the United States mail, postage prepaid, and properly addressed to the purchaser; (iii) settlement upon purchase of the property; (iv) occupancy of the property by the purchaser; (v) the execution by the purchaser of a written waiver of the purchaser's right of termination under this chapter contained in a writing separate from the real estate purchase contract; or (vi) the purchaser making written application to a lender for a mortgage loan where such application contains a disclosure that the right of termination shall end upon the application for the mortgage loan.

**The Purchaser(s) acknowledges that the Broker has informed the Purchaser of the Purchaser's rights and obligations with respect to this disclosure.**

_____    _____
Purchaser        Date            Purchaser        Date

© 2006 by the Roanoke Valley Association of REALTORS®. All rights reserved. This form may not be reproduced in any manner, including but not limited to deletions or additions, or by any electronic or mechanical means, without permission in writing from the Roanoke Valley Association of REALTORS®. This form may only be used by members in good standing of the Roanoke Valley Association of REALTORS®.

Rev. 2006                            Page 1 of 1